**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| LINDA POPE and SHELIA FREEMAN, | CIVIL ACTION FILE NO. |
| Plaintiffs, | |
| v. | **JURY TRIAL REQUESTED** |
| CHILDREN'S HEALTHCARE OF ATLANTA, INC., | |
| Defendant. | |

**COMPLAINT
AND DEMAND FOR JURY TRIAL**

COME NOW, Plaintiffs Linda Pope and Shelia Freeman, by and through their undersigned counsel, and hereby bring this action against Defendant Children's Healthcare of Atlanta, Inc., and allege as follows:

**NATURE OF THE ACTION**

1.      Plaintiffs Linda Pope and Shelia Freeman (collectively "Plaintiffs") bring this action under the Fair Labor Standards Act ("FLSA") of 1938, as amended, 29 U.S.C. § 201 et seq., alleging that Defendant Children's Healthcare of Atlanta, Inc. ("Defendant Healthcare") willfully failed to compensate Plaintiffs at

1

time and one-half for all hours and parts of hours worked in excess of forty (40) hours per week.

2.     As a result of Defendant Healthcare's failure to comply with FLSA's mandatory precepts, it is liable to Plaintiffs for all unpaid overtime wages, an equal amount of liquidated damages, and reasonable costs and attorneys' fees.

## PARTIES

3.     Plaintiff Linda Pope is a citizen of Georgia who resides in Atlanta, Georgia.

4.     Plaintiff Shelia Freeman is a citizen of Georgia who resides in Houston County, Georgia.

5.     Defendant Healthcare is a non-profit corporation organized and existing under the laws of the State of Georgia, with its principle place of business located at 1600 Tullie Circle, N.E., Atlanta, Georgia 30329-2303.

6.     Defendant Healthcare may be served with process by delivering a copy of the Complaint and Summons to its registered agent, Corporation Services Company, which is located at 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction of Plaintiffs' claims pursuant to 28 U.S.C. § 1331.

2.      Defendant Healthcare is subject to personal jurisdiction in the State of Georgia because it is a citizen of the forum state.

3.      Venue is proper pursuant to 28 U.S.C § 1391(b) and Local Rule 3.1(B)(3) in the Atlanta Division of the Northern District of Georgia because Defendant Healthcare resides within the District and Division.

4.      On information and belief, and at all times relevant, Defendant Healthcare has had an annual gross volume of sales made, or business done, in excess of $500,000.00.

5.      Defendant Healthcare primarily engages in the care of sick children and qualifies as an "employer" as defined by 29 U.S.C. § 203(d).

6.      Defendant Healthcare employed Plaintiffs, who were engaged in interstate commerce and/or in the production of goods for commerce.

## WILLFUL FAILURE TO PAY OVERTIME

7.      Plaintiff Pope was employed by Defendant Healthcare from approximately April 30, 2007, to January 26, 2012, as a Cash Application Specialist.

8.     Plaintiff Freeman was employed by Defendant Healthcare from approximately April 20, 2009, to December 31, 2010, as a Cash Application Specialist.

9.     Defendant Healthcare is one of the largest pediatric systems in the country, employing over 5000 employees at three (3) different hospitals and seventeen (17) neighborhood locations.

10.     Plaintiffs worked at Defendant's Office Park location and in Patient Financial Services.

11.     Plaintiffs' essential job duties included the correct and timely interpretation of third party correspondence and transactions, such as the balancing of cash transactions received in the form of electronic remittance files, SunTrust Bank lock boxes, and mail deposits.

12.     Plaintiffs also "scanned" voluminous documents, including checks, electronic remittance files, Explanation of Benefits Forms, and various other materials in conjunction with document storing and balancing procedures.

13.     Lastly, Plaintiffs processed credit card and insurance payments with batch settlement procedures.

14.    Generally, Monday through Friday, Plaintiffs worked "Shift 1," which was scheduled as an eight (8) hour-shift that began at 7:00 a.m. and concluded at 3:00 p.m., with a 60-minute lunch break.

15.    Defendant initially paid Plaintiff Pope an hourly wage of approximately $12.97 per hour, with annual raises of approximately 0.65¢.

16.    In 2009, Plaintiff Pope's hourly wage increased to approximately $14.27.

17.    Defendant paid Plaintiff Freeman an hourly wage of approximately $12.97 per hour.

## I.    THE "TIMECALL" SYSTEM.

18.    During the period of Plaintiff's employment, Defendant Healthcare utilized "TimeCall" and "TimePC", which were time-keeping systems that allowed employees to record hours worked through the telephone and a computer program.

19.    Plaintiffs had the option of using either time-keeping system, but Defendant Healthcare employees who lacked access to a computer were required to use TimeCall.

20.    Plaintiff Pope exclusively used TimeCall to clock in and out and to record her hours worked.

21.     Plaintiff Freeman utilized TimeCall before switching to TimePC on or about June 2009.

22.     Under the TimeCall time-keeping system, Plaintiffs clocked in and clocked out of work by dialing "1", followed by a pre-assigned ID and password. A long chime then indicated that the entry had been recorded.

23.     Upon information and belief, Plaintiffs then ended the call, and the data was transmuted to calculate total hours worked.

24.     At all relevant times, Defendant also utilized TimeCall to capture "non-productive time," such as professional leave, jury duty, holidays, and lunch breaks.

25.     Upon information and belief, the process of capturing "non-productive time" was similar to capturing "productive time." Instead of dialing "1", however, an employee dialed a pay code that correlated to a specific, non-productive task.

26.     Upon information and belief, TimeCall as implemented by Defendant Healthcare did not operate properly.

27.     For example, Plaintiffs routinely received an automated message stating that their pre-assigned ID and passwords were incorrect, even though Plaintiffs had entered their proper login information.

28.     At other times, TimeCall failed to operate when numerous employees simultaneously attempted to either clock-in or out. When this occurred, employees heard a busy dial-tone and were unable to clock in and out.

29.     Plaintiffs, accordingly, would attempt to clock in in periodic increments until TimeCall accepted their calls. But by the time they finally clocked-in, the recorded time did not accurately reflect their clock-in time, given that Plaintiffs had been performing work while attempting to clock in.

30.     Upon information and belief, TimeCall also failed to register the Plaintiffs' clock in and clock out times during system-upgrades.

31.     Such failures resulted in the miscalculation of hours worked and the under compensation of employee wages.

32.     As a consequence, Defendant Healthcare failed to make, keep, and preserve accurate records of Plaintiffs' wages, hours, and other practices of employment.

## II.     IMPROPER AUTOMATIC LUNCHTIME DEDUCTIONS.

33.     Upon information and belief, in January 2008, Defendant Healthcare adopted a new policy of automatically deducting from employee wages a 60-minute lunch period, regardless of whether a lunch break was actually taken by an employee.

34.     Upon information and belief, Defendant Healthcare adopted the policy of automatic lunchtime deductions to address the abuses of time-keeping that had occurred under its old timekeeping system.

35.     Upon information and belief, Defendant Healthcare informed employees that 60-minutes would be automatically deducted in cases where employees worked during their lunch break.

36.     Upon information and belief, Defendant automatically deducted a 60-minute lunch break from Plaintiffs' wages even though they rarely, if ever, actually took a lunch break.

37.     Plaintiffs routinely worked the majority of their lunch breaks.

38.     Plaintiffs processed credit card and insurance payments during their lunch period.

39.     Plaintiffs also scanned documents in conjunction with document storing and balancing procedures, all during their lunch period.

40.     Because Plaintiffs' worked while eating, they were not completely relieved of their duties.

41.     This real limitation on their personal freedom inured to the benefit of Defendant Healthcare.

42.    Defendant Healthcare knew and had reason to believe Plaintiffs continued to work during their lunch breaks and that the time was work-time.

43.    Upon information and belief, Plaintiffs' supervisors routinely asked Plaintiffs to perform work during their 60-minute lunch break.

44.    Upon information and belief, Plaintiffs' supervisors routinely asked Plaintiffs' to perform time-sensitive tasks at or near the beginning of their lunchtime breaks, which caused them to work during lunch breaks in order to meet deadlines.

45.    Upon information and belief, Plaintiffs' cubicles were situated in a manner that allowed supervisors to observe Plaintiffs working while eating lunch.

46.    For example, Plaintiff Pope worked in a cubicle that was connected to, and directly adjacent to, her supervisor's cubicle. Plaintiff's cubicle was also attached to and directly located in front of her manager's cubicle.

47.    Upon information and belief, Plaintiff Freeman worked in a cubicle that was located two cubicles away from where her supervisors and manager worked.

48.    Upon information and belief, Plaintiffs' supervisors at various times made statements that evidenced their knowledge that Plaintiffs were indeed working while eating.

49.     Upon information and belief, Defendant Healthcare had no formal policy that permitted an employee who did not take a 60-minute lunch break to have her wages adjusted to reflect the extra hour worked.

50.     Upon information and belief, Defendant Healthcare managers and supervisors created an environment that discouraged Plaintiffs from reporting any hours or part hours worked during lunch.

51.     Upon information and belief, if an employee worked in excess of forty (40) hours, managers and supervisors would make disapproving statements, such as: "People at payroll are going to get mad" and "I'm going to keep an eye on you."

52.     Defendant Healthcare's automatic deduction policy resulted in lost overtime to the extent that the operation of the automatic deduction policy deprived Plaintiffs of credit for hours worked in excess of forty (40) hours per week.

53.     As a consequence of the automatic deduction policy, Defendant Healthcare failed to compensate Plaintiffs at time and one-half for all hours worked.

54.     Defendant's violations of the FLSA's overtime provision, 29 U.S.C. § 207(a), were willful because Defendant: (1) failed to maintain accurate time

records, (2) failed to compensate Plaintiffs for all time worked during their scheduled lunch hour; (3) led Plaintiffs to believe that Defendant's automatic deduction policy conformed with the FLSA and the laws of the State of Georgia; and (4) discouraged Plaintiffs from reporting time worked in excess of forty (40) hours.

55.    Pursuant to 29 U.S.C. §§ 216(b) and 255(a), Defendant is liable to Plaintiffs for three years of unpaid overtime wages, an equal amount as liquidated damages, and reasonable attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Pope and Freeman respectfully pray that:

   a. Plaintiffs receive judgment against Defendant for unpaid overtime wages dating back to three years from the date that this action is filed;

   b. Plaintiffs receive judgment for liquidated damages equal to the amount of unpaid overtime wages;

   c. Plaintiffs receive an award of reasonable costs and attorney's fees;

   d. The Court award all other relief as it deems just and proper, including any and all equitable relief.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs Pope and Freeman

demand a jury trial on all issues triable by a jury.


**RESPECTFULLY SUBMITTED**:   April 13, 2012


| | |
|---|---|
| **MAYS & KERR LLC** | /s/ Viraj Parmar |
| 229 Peachtree Street NW | Viraj Parmar |
| International Tower \| Suite 980 | Ga. Bar No. 996884 |
| Atlanta, GA 30303 | viraj@maysandkerr.com |
| Telephone:  (404) 410-7998 | |
| Facsimile:   (877) 813-1845 | John L. Mays |
| Attorneys for Plaintiff | Ga. Bar No. 986574 |
| | john@maysandkerr.com |

12

13

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1D, counsel hereby certify that this Complaint and

Demand for Jury Trial has been prepared using Times New Roman 14 point font,

as approved by Local Rule 5.1C.

This 13th day of April, 2012

**MAYS & KERR LLC**                           /s/ Viraj Parmar
229 Peachtree Street NW                        Viraj Parmar
International Tower | Suite 980                 Ga. Bar No. 996884
Atlanta, GA 30303                              viraj@maysandkerr.com
Telephone:  (404) 410-7998
Facsimile:   (877) 813-1845                    John L. Mays
Attorneys for Plaintiff                        Ga. Bar No. 986574
                                               john@maysandkerr.com